UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VERNON S. POLK,
    Plaintiff,

vs.                                                    Case No.:  3:20cv2931/LAC/EMT

DR. LOPEZ-RIVERA, et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Vernon S. Polk (Polk), an inmate of the Florida Department of Corrections (FDOC) proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint (ECF No. 1).  Presently before the court is Polk's Amended Complaint (ECF No. 12).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by Polk, it is the opinion of the undersigned that dismissal of his claims is warranted.

I.    BACKGROUND

Polk sues prison officials and members of the medical staff at three correctional institutions, Okaloosa Correctional Institution, Blackwater River

Correctional Facility, and Franklin Correctional Institution (*see* ECF No. 12 at 2–4).[1] Polk claims that Defendants were deliberately indifferent to his medical needs by failing to provide physical therapy and pain medication for an injury to his hand, in violation of the Eighth Amendment (*id.* at 6–13). Polk seeks injunctive relief and compensatory damages (*id.* at 13–14).

II. STATUTORY SCREENING STANDARD

Because Polk is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to Plaintiff. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system.

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

III.   DISCUSSION

The facts included in this section are taken from Polk's Amended Complaint (ECF No. 12 at 6–12).

   A.   **Polk's Claims Against the Okaloosa C.I. Defendants Should Be Dismissed with Prejudice as Time-Barred**

Polk sues three Defendants at Okaloosa C.I., Dr. Lopez-Rivera, Nurse Myers, and Warden Sloan (ECF No. 12 at 2–3). Polk alleges that on September 31, 2014, he injured his right hand when he hit a wall while defending himself from an attack by another inmate (*id.* at 6). Polk alleges he filed a sick call request the next day, and a nurse gave him an ice pack and scheduled an appointment with Defendant Dr. Lopez-Rivera (*id.*). Polk alleges Dr. Lopez-Rivera wrapped his hand, provided ibuprofen for pain, issued a low bunk pass, and ordered an x-ray (*id.*). Polk alleges he received an x-ray on October 3, 2014 (three days after the injury), and it indicated a fracture (*id.*). Polk alleges on October 9, Dr. Lopez-Rivera provided more ibuprofen, extended the low bunk pass, and told Polk he would refer him for a

consultation with an outside specialist (*id.* at 6–7). Polk alleges he subsequently received a splint, and medical staff twice re-wrapped his hand (*id.* at 7). Polk alleges he received another x-ray on November 14, 2014, upon Dr. Lopez-Rivera's order, which again indicated a fracture (*id.*). Polk alleges on November 17, 2014, Dr. Lopez-Rivera reassured him that he would be sent to an outside specialist for a consultation for his "immobile and disfigured" hand (*id.*). Dr. Lopez-Rivera also continued Polk's pain medication and extended the low bunk pass (*id.* at 7–8).

Polk alleges in February of 2015, he requested more pain medication and renewal of his low bunk pass, because Defendant Warden Sloan confiscated his pain medication from his personal property (ECF No. 12 at 8–9).[2] Polk alleges Nurse Myers and Dr. Lopez-Rivera denied his request (*id.*). Polk alleges he filed an informal grievance, formal grievance, and appeal in March and April of 2015, but they were denied (*id.*).

Polk alleges on November 14, 2015, he filed a sick call request to inquire about reconstructive surgery (ECF No. 12 at 8). He alleges he was seen by Defendant Nurse Myers, who referred him to "clinic pain medication" (*id.*). Polk

---

[2] The fact that Polk had pain medication in his personal property undermines his claim that he needed it. If Polk truly needed medication to manage his pain, it seems he would have taken it when it was provided, instead of accumulating it and storing it in his personal property.

alleges Dr. Lopez-Rivera ordered another x-ray of his hand on November 24, 2015, which indicated that the fracture had healed (*id.*). Polk alleges on that day, Dr. Lopez-Rivera told him that a specialist was no longer needed because mobility of the hand was only slightly limited, and the disfigurement would eventually fade (*id.*).

Polk alleges he was transferred from Okaloosa C.I. to Blackwater River C.F. on November 25, 2015 (ECF No. 12 at 9–10).

Section 1983 does not contain a specific statute of limitations; therefore, Section 1988 directs district courts to select and apply the most appropriate or analogous state statute of limitations. *See* 42 U.S.C. § 1988(a). Florida's four-year statute of limitations applies to Plaintiff's § 1983 claims. *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (citation omitted).

Although the court applies Florida law in this regard, federal law determines the date on which the limitations period begins to run. *See Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003). The Eleventh Circuit has held that the statute of limitations begins to run from the date "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* (citation omitted).

Florida law authorizes the tolling of statutory limitations period in certain specified circumstances, none of which are involved in this case. *See* Fla. Stat. § 95.051. And although federal courts also authorize equitable tolling, it is "an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citation omitted).

Here, the facts that would support a cause of action against Warden Sloan, for depriving Polk of his pain medication and low bunk pass, were apparent, or should have been apparent to a person with a reasonably prudent regard for his rights, on or before March 31, 2015, the date that Sloan denied Polk's grievance regarding confiscation of the medication and pass. With respect to Nurse Myers and Dr. Lopez-Rivera, the facts that would support a cause of action against them, for failing to provide treatment for Polk's hand, were apparent, or should have been apparent to a person with a reasonably prudent regard for his rights, on or before November 24, 2015, the date Dr. Lopez-Rivera told Polk that he would not receive a consultation with an outside specialist or any more treatment for his hand. Polk was thus required to file his § 1983 suit against the Okaloosa C.I. Defendants (Warden Sloan, Nurse Myers, and Dr. Lopez-Rivera) by November 24, 2019, at the latest. Polk commenced this lawsuit on February 2, 2020, the date he states he placed his

initial Complaint in the hands of prison officials for mailing to the court (*see* Complaint, ECF No. 1, at 9). Polk thus filed his § 1983 claims against the Okaloosa C.I. Defendant too late.

Despite the court's previously notifying Polk of the limitations issue and the potential availability of equitable tolling, and the court's providing Polk an opportunity to show that his claims against the Okaloosa C.I. Defendants are not time-barred (*see* ECF No. 5), Polk's Amended Complaint does not include any facts suggesting that the extraordinary remedy of equitable tolling applies or that his claims are otherwise not time-barred. Because Polk filed suit against Warden Sloan, Nurse Myers, and Dr. Lopez-Rivera more than four years after the accrual date of each of his claims, his claims against these Defendants should be dismissed with prejudice as time-barred.

### B.  Polk's Claims Against the Blackwater River C.F. Defendants Should Be Dismissed with Prejudice for Failure to State a Claim

Polk alleges that on March 15, 2017, more than a year after he was transferred to Blackwater River C.F., he filed a sick call request (ECF No. 12 at 10). Polk alleges a nurse (M. Zotti, who is not a named Defendant) gave him ibuprofen for pain and advised him that additional treatment could only be ordered by a doctor (*id.*).

Polk alleges that nine months later, on December 18, 2017, he filed a sick call request (ECF No. 12 at 10). Polk alleges he was not seen by a doctor, but a nurse ("T.S.," who is not a named Defendant) gave him ibuprofen on December 22, 2017 (*id.*). Polk alleges he filed a formal grievance on January 23, 2018, but Defendant Dr. Molina denied it (*id.*). Polk alleges he filed another formal grievance on May 14, 2018, but Dr. Molina again denied it (*id.*).

Polk alleges that on August 19, 2018, he filed a sick call request (ECF No. 12 at 10). Polk alleges Defendant Nurse Simpson examined him on August 22, 2018 (nearly three years after the x-ray showed that the fracture had healed) (*id.*). Polk alleges Nurse Simpson gave him ibuprofen for pain and told him that "misplaced knuckles comes along with fighting" (*id.*).

Polk alleges that nearly one year later, on July 27, 2019, he filed a sick call request (ECF No. 12 at 11). Polk alleges he was again seen by Defendant Nurse Simpson on July 31, 2019 (*id.*). Polk alleges Nurse Simpson acted as if she had never evaluated his hand before, even though she had done so one year prior (*id.*).

Polk filed a formal grievance on August 13, 2019, but Defendant Dr. Semple denied the grievance (ECF No. 12 at 11).

Page 10 of 18

Polk alleges he was transferred from Blackwater River C.F. to Franklin C.I. on October 5, 2019 (ECF No. 12 at 12).

Polk brings an Eighth Amendment claim against Dr. Molina, Dr. Semple, and Nurse Simpson for failing to provide physical therapy and pain medication for his hand (ECF No. 12 at 13).

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Under the Amendment, the "[f]ederal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). As particularly relevant here, the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate-indifference claim entails both an objective and a subjective component. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"—

that, "if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotation omitted).

Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) they had "subjective knowledge of a risk of serious harm" and (2) they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." *Id*. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate-indifference standard is akin to "subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 839–40; *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 n.2 (11th Cir. 2020). A defendant's "failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The Eleventh Circuit has held, for instance, that the Constitution does not require that the medical care provided to prisoners be "perfect, the best obtainable, or even very

good." *Harris*, 941 F.2d at 1510 (quotation omitted). Rather, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505 (quotation omitted).

"[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). Respondeat superior is a legal theory under which someone higher up in the chain of authority becomes automatically responsible for the conduct of a lower placed employee, without any active wrongdoing by the higher-up. "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). The complaint must plausibly show that the supervisory official acted with the same mental state required to establish a constitutional claim against the subordinate. *See Franklin v. Curry*, 738 F.3d 1246, 1249 (11th Cir. 2013) (holding that in evaluating whether a complaint states a claim under § 1983 against a supervisor for the violation of the

plaintiff's constitutional rights, the court must first identify the precise constitutional violation charged, e.g., deliberate indifference, and then determine whether the complaint alleges the required elements against the supervisor). "[T]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (alteration in original) (internal quotation marks omitted).

Additionally, merely denying a grievance without personally participating in the unconstitutional conduct brought to light by the grievance is insufficient to establish § 1983 liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance).

Polk's only factual allegations against Dr. Molina and Dr. Semple are that they denied his formal grievances. The mere fact that the doctors denied grievances does not plausibly suggest that either one doctor subjectively knew that Polk faced

a substantial risk of serious harm if he did not receive physical therapy and/or pain medication for a fracture that was medically deemed healed in November of 2015, more than two years prior to the dates of Polk's formal grievances (Dr. Molina denied grievances filed by Polk in January and May of 2018, and Dr. Semple denied a grievance filed by Polk in August of 2019). Polk has not alleged facts that plausibly suggest that either Dr. Molina or Dr. Semple was deliberately indifferent to a serious medical need; therefore, Polk's claims against the doctors should be dismissed for failure to state a claim.

With respect to Nurse Simpson, Polk alleges the first time Simpson saw him was in August of 2018, nearly three years after the x-ray showed that the fracture had healed. Polk alleges Simpson gave him ibuprofen for pain. He alleges Nurse Simpson saw him again almost one year later, in July of 2019, and apparently offered him no treatment. Considering the fact that Polk's hand was deemed medically healed years prior, Polk cannot show that Nurse Simpson's failure to provide additional treatment constituted deliberate indifference to a serious medical need. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (the question of whether additional diagnostic techniques or forms of treatment should have been employed is a matter for medical judgment and is not an appropriate basis for liability under

Case No.:  3:20cv2931/LAC/EMT

the Eighth Amendment); *Murrell v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980) (deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care).

Polk's factual allegations fail to state a plausible Eighth Amendment claim against any of the Blackwater C.F. Defendants (Dr. Molina, Dr. Semple, and Nurse Simpson); therefore, his claims against these Defendants should be dismissed, pursuant to §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

**C.  Polk's Claim Against the Franklin C.I. Defendant Should Be Dismissed with Prejudice for Failure to State a Claim.**

Polk's initial Complaint in this case did not name any Defendants from Franklin C.I., Polk's current institution, and it did not include any specific factual allegations concerning medical treatment he received (or did not receive) at Franklin C.I.[3] Upon screening the Complaint, the court advised Polk of the objective and subjective components of a deliberate indifference claim, notified him that his factual allegations failed to state a plausible Eighth Amendment claim against his

---

[3] The only allegation that could remotely be construed as an allegation against a current medical provider was Polk's very general assertion at the conclusion of his Statement of Facts which stated, "Plaintiff still have [sic] not received any pain management medication & [sic] as a final result, plaintiff is still left in constant agonizing pain & [sic] with no follow-up treatment therapy, range of motion or mobility in his disfigured right hand."(ECF No. 1 at 8).

medical providers, and provided him the opportunity to correct the pleading deficiencies in an amended complaint (*see* ECF No. 5 at 7–13).

In the instant Amended Complaint, Polk now names a nurse from Franklin C.I. as a Defendant, Nurse Rush, and asserts an Eighth Amendment claim against him/her. Polk's sole allegation against Defendant Nurse Rush is that Rush saw him in sick call on November 15, 2019 (ECF No. 12 at 12). Polk alleges he confided in Nurse Rush about the hardships he was experiencing "trying to cope with being handicapped in prison" (*id.*). Polk alleges he "disclosed grievances, civil rights violations, etc." (*id.*). Polk alleges Nurse Rush told him that he likely had alienated correctional staff and medical personnel by filing grievances, and that he would be afforded adequate medical care at his current institution if he refrained from filing such complaints (*id.*). Polk alleges Nurse Rush "ultimately renege[d] on promise [sic]" (*id.*).

Polk's vague assertion against Nurse Rush falls far short of stating an Eighth Amendment claim under the pleading standard of which Polk was advised. Further, considering the fact that Polk's hand was deemed medically healed four years before Nurse Rush first saw him, Polk cannot show that Nurse Rush's failure to provide additional treatment constituted deliberate indifference to a serious medical need.

Case No.: 3:20cv2931/LAC/EMT

Polk's Eighth Amendment claim against Nurse Rush should thus be dismissed for failure to state a claim, pursuant to §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

IV.     CONCLUSION

Polk's claims against Dr. Lopez-Rivera, Nurse V. Myers, and Warden J. Sloan are time-barred. Polk's factual allegations against the remaining Defendants, Dr. Molina, Dr. Semple, Nurse Simpson, and Nurse Rush, fail to state a plausible Eighth Amendment claim, and there is indication that providing Polk another opportunity to amend will result in a pleading that states a plausible claim for relief. Therefore, the undersigned recommends that Polk's claims be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Accordingly, it respectfully **RECOMMENDED**:

1.     That Plaintiff's claims against Defendants Dr. Lopez-Rivera, Nurse V. Myers, and Warden J. Sloan be **DISMISSED with prejudice** as time-barred, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

2.     That Plaintiff's claims against Defendants Dr. A. Molina, Dr. G. Semple, Nurse S. Simpson, and Nurse Rush be **DISMISSED with prejudice** for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

3. That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 12th day of March 2021.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control**</u>**. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**